# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **NOKIA TECHNOLOGIES OY**<br>and **ALCATEL-LUCENT USA INC.,** | |
| **Plaintiffs,** | **Civil Action No. 2:16-cv-1440** |
| **v.** | |
| **APPLE INC.,** | **JURY TRIAL REQUESTED** |
| **Defendant.** | |
| **APPLE INC.** | |
| **Counterclaim Plaintiff,** | |
| **v.** | |
| **NOKIA TECHNOLOGIES OY,**<br>**NOKIA CORPORATION, AND**<br>**ALCATEL-LUCENT USA INC.** | |
| **Counterclaim Defendants.** | |

## MOTION TO DISMISS OF NOKIA TECHNOLOGIES OY, NOKIA CORPORATION, AND ALCATEL-LUCENT USA INC.

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .......................................................................................1

II.    LEGAL STANDARD...............................................................................4

III.   ARGUMENT ...........................................................................................5

       A.    Apple's antitrust counterclaim should be dismissed for failure to plausibly allege anticompetitive conduct. ......................................................5

       B.    Apple's antitrust counterclaim should be dismissed for failure to plausibly allege a relevant market or monopoly power ...............................9

       C.    Apple's California unfair competition law counterclaim should be dismissed. ....................................................................................11

       D.    Apple's breach of contract counterclaim should be dismissed. .................13

       E.    Apple's promissory estoppel counterclaim should be dismissed...............15

IV.   CONCLUSION .......................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Apani Sw., Inc. v. Coca-Cola Enters*,
    300 F.3d 620 (5th Cir. 2002) ........................................................................9

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds*,
    *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ............................15

*Apple, Inc. v. Motorola Mobility, Inc.*,
    No. 11-cv-178-bbc, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012)............................14

*Apple Inc. v. Samsung Elecs. Co.*,
    2012 U.S. Dist. LEXIS 67102 (N.D. Cal. May 14, 2012) ...........................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................4

*Beatrice Foods Co. v. F.T.C.*,
    540 F.2d 303 (7th Cir. 1976)..........................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................4, 11

*Button v. Chubb Lloyds Ins. Co. of Tex.*,
    2012 U.S. Dist. LEXIS 179231 (E.D. Tex. Dec. 19, 2012) ....................................15, 16

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004)............................................................................4

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P. 2d 527 (1999) ...................................................................................12, 13

*Chavez v. Whirlpool Corp.*,
    113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2001) ...................................................12

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010)..........................................................................6, 7

*Doctor's Hosp. v. Southeast Medical Alliance*,
    123 F.3d 301 (5th Cir. 1997)............................................................................5

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008)..........................................................................2, 6

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight Inc.*,
    365 U.S. 127 (1961) ....................................................................................8

*Felder's Collision Parts, Inc. v. All Star Adver. Agency, Inc.*,
    777 F.3d 756 (5th Cir. 2015) .......................................................................5

*Goss v. Firestone Polymers, L.L.C.*,
    2005 U.S. Dist. LEXIS 32755 (E.D. Tex. Apr. 13, 2005) .....................15, 16

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d 898, 911 (N.D. Cal. 2016) .........................................12, 13

*In re Dibiase*,
    270 B.R. 673 (Bankr. W.D. Tex. 2001) ......................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................5

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994).......................................................................5

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007).......................................................................4

*Orthoaccel Techs. v. Propel Orthodontics, LLC*,
    2017 U.S. Dist. LEXIS 50008 (E.D. Tex. Apr. 3, 2017) ...........................4, 9

*Sam v. Wells Fargo Bank, N.A.*,
    2016 U.S. Dist. LEXIS 73028 (S.D. Tex. May 20, 2016) ...........................14

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010).....................................................................12

*Stearns Airport Equip. Co. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999)....................................................................5, 7

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*,
    No. No. 14–0341, 2016 WL 7049263 (C.D. Cal. Aug. 9, 2016) .................11

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. Tex. 1994) ...............................................................6

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
    336 F.3d 375 (5th Cir. 2003)........................................................................6

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997)........................................................................5

iii

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................................11, 13

Cal. Bus. Prof. Code § 17204............................................................................................11

**OTHER AUTHORITIES**

Rule 9(b) ......................................................................................................................2, 5, 7

Rule 12(b)(6)..............................................................................................................2, 4, 11

## I.      INTRODUCTION

Nokia Technologies Oy, Nokia Corporation, and Alcatel-Lucent USA, Inc., (collectively "Nokia") have a long history of innovation in the area of mobile telephony. This case concerns Nokia's innovations in the field of video coding, which allows video to be compressed to save bandwidth during transmission. Video coding is particularly important for sending video over wireless connections. Nokia was awarded numerous patents for its innovations in video coding. Nokia contributed its innovations to the H.264 standard, which is available for use by any company that wishes to employ H.264 in its products. In return for making its technology available to the industry, Nokia has requested a reasonable and non-discriminatory (RAND) royalty be paid by companies that use Nokia's technology.

Although Apple disputes Nokia's offered rate to Apple as being too high and states that it is entitled to receive a RAND rate, Apple never acknowledges its corresponding duty to license and pay appropriate compensation for patented technology that it is currently using. Nokia originally filed this case against Apple for patent infringement asserting 8 patents containing claims essential to H.264 video decoders because, following extensive negotiations, Apple refused to pay Nokia's established royalty rates. Nokia's H.264 royalty rates have been established in over 40 license agreements with other companies. Despite extensive efforts by Nokia to negotiate in good faith with Apple, Apple has persisted in demanding a special royalty rate that is orders of magnitude less than others are paying. Ironically, despite Apple's counterclaims asserting breach of RAND, Apple really is demanding that Nokia offer Apple a special deal that would be inconsistent with RAND, departing radically from the RAND terms accepted by the dozens of licensees to Nokia's H.264 portfolio.

More ironic is the notion that Apple is the victim of a monopolistic scheme that has caused Apple to suffer economic injury. Apple has never paid Nokia a single penny in royalties

to use its H.264 patent portfolio. Instead, Apple has, to date, enjoyed a free ride on Nokia's essential H.264 patented inventions. If anything, Apple has unjustly benefitted from its hold out. Apple is currently competing royalty free against companies that have licensed Nokia's H.264 technology.

Apple's strategy in response to Nokia's patent infringement suit is to prolong Apple's free ride as long as possible by procedurally bogging down Nokia's infringement case. To that end, Apple brings three categories of counterclaims: (1) counterclaims based on alleged breach of RAND (styled as breach of contract, promissory estoppel, and antitrust/competition statute violations); (2) counterclaims for infringement of four of Apple's own declared essential H.264 related patents; and (3) counterclaims for infringement of four cellular (LTE) related patents that Apple purchased in the Nortel bankruptcy auction via the Rockstar consortium that Apple founded with several other companies. These counterclaims are not suited for a single trial, which is the subject of Nokia's proposed bifurcation. This motion is directed towards the first category of counterclaim based on allegations of breach of RAND. Apple's purported claims fail on the merits.  But because this is a motion under Rule 12(b)(6) in which the Court is required to accept properly pleaded factual assertions as true, Nokia's motion to dismiss will focus on fatal legal deficiencies in Apple's claims in four areas.

*First,* Apple failed to plead sufficient facts to support a plausible inference that Nokia achieved or maintained monopoly power through anticompetitive conduct. Apple alleges that Nokia acquired monopoly power by making "false RAND commitments" to the ITU, but when alleging fraud, as Apple does, a plaintiff must allege "specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Apple cites no facts in support of its conclusory allegation, and thus fails to satisfy Rule 9(b). In addition, Apple does

not properly plead conduct that harmed competition in violation of the antitrust laws. Apple fails to identify a single alternative available technology that would have been adopted in its "but-for" world and absent available open and non-proprietary alternatives, there would be no effect from Nokia's alleged false RAND commitments.

*Second,* Apple fails to sufficiently allege an additional essential element of its antitrust and competition claims: a properly defined relevant market and monopoly power in a properly defined relevant market. Apple's Amended Counterclaim alleges an unspecified number of "Input Technology Markets," which Apple describes as "encompass[ing] technologies that compete or formerly competed to perform each of the various functions that Nokia claims are covered by the asserted patents." This vague "definition" says nothing about what the competing technologies are, what the technologies do (or did), what technologies are reasonably interchangeable with any "Input Technology," or any prior, or would-be competitor that could supply such unidentified technologies or the terms they would offer to license such alternative technologies if included in the standard. This failure to supply basic, notice pleading of the alleged relevant market alone requires dismissal of Apple's competition claims. Apple's failure to sufficiently allege that Nokia had monopoly power in any supposed "Input Technology Market" is another reason why Apple's antitrust counterclaims should be dismissed.

*Third*, Apple's claims for violations of California's unfair competition statute are deficient for the same reasons as Apple's antitrust allegations. California's unfair competition statute requires many of the same elements (anticompetitive conduct affecting a relevant market, etc.) as its federal counterpart, the Sherman Act.

*Fourth*, Apple's claims that Nokia breached RAND by including, in its request for relief, an injunction against Apple to the extent that it is an unwilling licensee should be dismissed.

Seeking an injunction against an unwilling licensee is perfectly consistent with existing law. Furthermore, Apple's entire breach of contract claim should be dismissed due to its failure to plead that Nokia's asserted patent claims are essential to the H.264 standard, a condition precedent to Nokia's commitment to license those patent claims on RAND terms.

At a fundamental level, Apple's antitrust and related theories overlook basic tenets of the U.S. patent system: namely, that patentees have the right to earn royalties for their patented inventions in order to ensure continued incentives for innovation, and that patentees can use their patents for their own products or license their patents all or in part to others. Apple is "dressing up in antitrust garb" its complaints about the patent system and its desire to earn more money by paying less to patent holders with valid intellectual property rights.

## II.    LEGAL STANDARD

A complaint cannot survive a Rule 12(b)(6) motion to dismiss if it does not contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007). In this analysis, the Court accepts "as true the well-pleaded factual allegations in the complaint." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But the Court does not "accept as true a legal conclusion couched as a factual allegation." *Norris*, 500 F.3d at 464. Furthermore, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, "the Court should identify and disregard conclusory allegations, for they are 'not entitled to the assumption of truth.'" *Orthoaccel Techs. v. Propel Orthodontics, LLC*, 2017 U.S. Dist. LEXIS 50008, at *6 (E.D. Tex. Apr. 3, 2017); *see also Iqbal*, 556 U.S. at 664.

With respect to antitrust claims in particular, the Fifth Circuit recognizes that "the lure of treble damage recovery for otherwise ordinary tort and contract actions has inspired 'antitrust'

4

lawsuits that do not fulfill [the] goals" of the Sherman Act, and thus motions to dismiss may frequently provide "a useful filter at an early stage of litigation"—particularly when the plaintiff has attempted to make out an "atypical antitrust case." *Doctor's Hosp. v. Southeast Medical Alliance*, 123 F.3d 301, 306 (5th Cir. 1997). Furthermore, given that the allegations at issue here would attach antitrust liability to active participation in a standard setting organization—conduct widely recognized as procompetitive and beneficial to consumers—the Court should analyze the factual allegations carefully, as "mistaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *Felder's Collision Parts, Inc. v. All Star Adver. Agency, Inc.*, 777 F.3d 756, 760 (5th Cir. 2015).

## III.   ARGUMENT

### A.   Apple's antitrust counterclaim should be dismissed for failure to plausibly allege anticompetitive conduct.

To make out a claim under § 2 of the Sherman Act, Apple must plead sufficient facts to support a plausible inference that Nokia achieved or maintained monopoly power through anticompetitive conduct. *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999). Apple alleges that Nokia acquired monopoly power by making "false RAND commitments" to the ITU to ensure that Nokia's technology was recommended in the H.264 standard. But Apple has not pleaded these allegations of deception with the particularity required by Rule 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how of the alleged fraud.'" *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); Fed. R. Civ. P. 9(b). But while Rule 9(b) "expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris*, 27 F.3d 1097,

1102 (5th Cir. 1994); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). It is true that certain facts that "are peculiarly within the opposing party's knowledge" may be pleaded "based on information and belief," but this "luxury may not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. Tex. 1994); *Dorsey*, 540 F.3d at 339. And, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003). When alleging fraud, as Apple does, a plaintiff must allege "specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

Apple's pleading does not come close to meeting this standard. The bald assertions that Nokia "made intentionally false RAND commitments" and "had no intention of offering licenses to its declared SEPs on RAND terms," Dkt. 28 at 35-36, are "meaningless absent any factual allegations" that would support these inferences, and are thus "essentially nothing more than a conclusory statement of the element of the cause of action, [lacking] sufficient specificity." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154 (5th Cir. 2010); *see also Encompass Office Solutions*, 775 F. Supp. 2d at 955. Such conclusory allegations of fraud have been rejected time and again by the Fifth Circuit. *City of Clinton*, 632 F.3d at 154; *Dorsey*, 540 F.3d at 339; *Tuchman*, 14 F.3d at 1068. The only supporting facts that Apple offers are those relating to the present disagreement over licensing terms between Apple and Nokia. But Nokia made its allegedly fraudulent RAND declarations beginning in 2001, well over a decade ago. The fact that Apple and Nokia are in the midst of a dispute today does not plausibly suggest that Nokia set out to acquire monopoly power through a series of purportedly fraudulent acts beginning in 2001—

6

particularly when there is no dispute that Nokia *has* been licensing these patents on reasonable and nondiscriminatory terms to other H.264 standard implementers.[1] *Stearns*, 170 F.3d at 522. Indeed, the remaining facts plead in Apple's complaint support the opposite inference—that Nokia did not falsely agree to license its essential patent claims on RAND terms. As Apple acknowledges, Nokia licensed dozens of willing parties under the patents-at-issue after making its RAND declarations. Apple's pleading provides no specific facts that would permit any plausible inference of deceptive intent in 2001 and for that reason alone, Apple's pleading is insufficient under Rule 9(b) and cannot survive this motion to dismiss. *City of Clinton*, 632 F.3d at 154.

In addition to this fatal shortcoming in Apple's antitrust counterclaim, Apple also fails to plead conduct that caused harm to competition.  Without specifying any particular Nokia patented technologies that Apple contends were incorporated into the H.264 standards, Apple alleges that if Nokia's proposed technology were not adopted into the standard, then a different technology could have been adopted.[2] Dkt. 28 at 50. But this allegation is unsupported by any facts. Indeed, Apple fails to identify a single alternative technology that could have or might have been selected for the standard, choosing instead to cite *Ericsson, Inc. v. D-Link Sys., Inc.*, for the general proposition that "[w]hen a technology is incorporated into a standard, it is *typically* chosen from among different options." *Id*. (emphasis added). This shortcoming is

---

[1] While Apple does not proffer factual matter supporting its claims of scienter, Apple admits and pleads affirmative facts contradicting its conclusory assertion of deceptive intent. For example, Apple admits that, during meetings between the parties, "Nokia informed Apple that it was adding more licensees to its H.264 portfolio each month," and that "Nokia informed Apple about the balance of licensees electing to license patents relating to encoding or both encoding and decoding." Dkt. 28 at 7; *see also id.*at 24 (acknowledging "[Nokia's] licensed suppliers"); *id.* at 41 (acknowledging that Nokia "has signed dozens of licenses" to these patents).

[2] Apple also made the conclusory statement that the ITU could have left "the relevant functionality out of the standard," but failed to allege any facts plausibly suggesting that the standard could have been implemented without Nokia's technology.

critical because, without any alternative, the inexorable result is that use of Nokia's technology—whether specifically incorporated into the H.264 standard or not—would be required for the use of the H.264 standard.

Finally, Apple's pleading of anticompetitive conduct should be rejected because it chills standard setting investment and participation, thereby injuring competition among standard setting participants, and ultimately harming consumers. This is directly contrary to the goals of the antitrust laws. Under Apple's theory, any company that contributes its patented idea to a standard and makes a corresponding RAND commitment will be subject to an anti-trust lawsuit and treble damages whenever a potential licensee does not like its proposed license terms, even if, as here, dozens of other licensees have accepted those terms.[3] An unwilling licensee, like Apple, need only allege—with absolutely no supporting evidence—that the RAND commitment made at the time of standardization was false. The contributor to the standard can then choose to fight the lawsuit, which may cost millions of dollars in attorney's fees and result in the same RAND rate for its patent, or submit and allow the plaintiff to pay a sub-competitive rate. Apple's proposed rule that any declared standard essential patent claim be subject to antitrust litigation will depress the value of such patent claims and chill participation in standard-setting bodies.[4]

---

[3] Where, as here, a RAND commitment has been made, an aggrieved party who believes it has been overcharged has recourse by enforcing the RAND obligation as applicable to the asserted patent claims. The commitment itself acts as a contractual safeguard and enforcement mechanism against excessive monopoly pricing for such applicable patent claims.

[4] To the extent that Apple's competition claims are based upon Nokia's request for injunctive relief, those claims should be dismissed because, in addition to the reasons set forth herein, a request for an injunction to a federal court is protected by the *Noerr Pennington* doctrine and is immune from antitrust challenge. No court has ever held that requesting a court to issue an injunction constitutes a violation of the Sherman Act. Petitioning activity, which includes seeking relief in court, is protected by the First Amendment and immune from antitrust liability under the *Noerr Pennington* doctrine if the underlying lawsuit is not a sham (objectively baseless). *Eastern R.R. Presidents Conf. v. Noerr Motor Freight Inc.*, 365 U.S. 127 (1961).

**B.      Apple's antitrust counterclaim should be dismissed for failure to plausibly allege a relevant market or monopoly power**

"As a prerequisite to any antitrust claim, [the] plaintiff must allege a relevant market in which the anticompetitive effects of the challenged activity can be assessed." *Orthoaccel*, 2017 U.S. Dist. LEXIS 50008, at *8. Although disputes concerning relevant markets typically present an issue for the fact-finder, "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted." *Apani Sw., Inc. v. Coca-Cola Enters*, 300 F.3d 620, 628 (5th Cir. 2002).

Apple describes its alleged market as follows:

> the relevant markets encompass technologies that compete or formerly competed to perform each of the various functions that Nokia claims are covered by the asserted patents. These are referred to collectively as the 'Input Technology Markets.' Each Input Technology Market comprises its own relevant antitrust market.

Dkt. 28 at 32. This vague description falls far short of the pleading requirements in the Fifth Circuit.

Apple's purported market definition says nothing about what any "Input Technology" actually does, what competing "Input Technologies" are, what those "Input Technologies" do (or did), whether any technologies may be reasonably interchangeable with any "Input Technology" and the cross elasticity of demand (at any point in time) between Nokia's alleged "Input Technology" and any other competing "Input Technology," and the identity of any prior or would-be entities that did, or could supply any competing unidentified "Input Technologies." This falls well short of the pleading requirements set forth in *Apani*.

Apple will likely argue that other courts outside of the Fifth Circuit have upheld allegations of "input technology markets" similar to those proposed by Apple in this case. *See Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 67102, at *22-23 (N.D. Cal. May 14, 2012). But those cases do not control this Court. Fifth Circuit precedent demands more than Apple's vague allegations that leave Nokia guessing as to what markets are actually implicated by Apple's counter-claims. Apple offers no facts with respect to these questions that are necessary to define *any* relevant market and to assess an alleged impact on competition in that market. *See Walker Process*, 382 U.S. at 177.

Apple compounds its failure to adequately plead any cognizable relevant antitrust market by failing to plausibly allege facts supporting the concept that Nokia has monopoly power in any market. This is yet another reason why Apple's competition claims should be dismissed.

Apple has not pleaded that Nokia's asserted patent claims are essential to practicing the H.264 standard, and in fact, has pleaded the opposite, denying Nokia's allegation that the asserted claims are essential. Dkt. 28 at 21. Indeed, Apple only describes the patent claims as "purportedly" and "allegedly" essential. Dkt. 28 at 2, 5, 25. Apple alleges that "merely by asserting" that its patented inventions are essential to H.264, Nokia obtains monopoly power and can "extract royalties . . . greatly exceeding what it could have obtained before ITU standardized the technology Nokia claims is covered by its patent." (Par. 35). This theory of monopoly power makes no sense; if a patent claim is not in fact essential to the standard at issue, then the owner of that patent cannot derive monopoly power from the standard's implementation. In that situation, any party can practice the standard without infringing the non-essential patented claims. Pleading standard essentiality is thus fundamental to the allegations of monopoly power

supporting Apple's misguided antitrust claims.  Because Apple does not make that allegation, its antitrust claims must be dismissed.

### C.   Apple's California unfair competition law counterclaim should be dismissed.

In its fourth counterclaim, Apple alleges that Nokia has engaged in unfair competition in violation of Cal. Bus. Prof. Code § 17200, et seq. (the Unfair Competition Law or UCL). Dkt. 28 at 154. This claim is a state law counterpart of Apple's Sherman Act claim, and should be dismissed for many of the same reasons that the Sherman Act claim should be dismissed.

As an initial matter, Apple lacks standing to pursue a UCL claim, for the UCL only allows suits by a person who "has lost money or property as a result of the unfair competition." Cal. Bus. Prof. Code § 17204. Apple's only non-conclusory allegations of direct injury concern "being forced to expend resources to defend claims of patent infringement." Dkt. 28 at 156. But the costs of defending against good faith patent infringement suits "cannot be the basis for [Apple's] 'economic injury' due to the *Noerr-Pennington* doctrine." *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. No. 14–0341, 2016 WL 7049263, at *4 (C.D. Cal. Aug. 9, 2016) (holding that TCL did not have standing to assert UCL claim because cost of defending against injunctions brought by SEP holder was not economic injury). Apple makes no effort to plausibly allege any exception to the *Noerr-Pennington* doctrine; therefore, it has not alleged economic injury and lacks standing to bring a UCL claim.

Further, Apple's conclusory and unsupported allegations cannot satisfy the Rule 12(b)(6) pleading standards to establish entitlement to relief under the UCL. *See Twombly*, 550 U.S. at 557. The UCL allows a cause of action for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Apple claims violations of both the "unlawful" and the "unfair" prongs of the UCL. Dkt.

11

28 at 154-55. The California Supreme Court has held that "an act or practice may be actionable as 'unfair' under the unfair competition law even if it is not 'unlawful.'" *Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 184 (Cal. Ct. App. 2001) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P. 2d 527, 540 (1999)). But, where conduct alleged to be "unfair" under the UCL is also a violation of another law, "the UCL claim rises or falls with the other claims." *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016). This requirement is necessary because allowing "separate inquiry into essentially the same question under the unfair competition law would ... invite conflict and uncertainty." *Chavez*, 113 Cal. Rptr. 2d at 184.

Apple has not sufficiently alleged any unlawful conduct. As shown above, its allegations do not state a claim for monopolization under the Sherman Act; that deficient claim therefore cannot form the basis of a UCL claim under the "unlawful" prong. The breach of contract and promissory estoppel allegations are also inadequate as a matter of law because "a common law violation such as breach of contract is insufficient" to state a claim under the "unlawful" prong. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quotation and citation omitted). Nor is Apple aided by its references to Section 5 of the Federal Trade Commission Act. Dkt. 28 at 154. Apple cites two negotiated FTC consent decrees as purported authority on the scope of Section 5, but neither represents an adjudicated determination on the merits. Furthermore, as the California Supreme Court has recognized, it is the "federal courts [that] are the ultimate arbiters of the meaning and scope of section 5 and the FTC's authority under it." *Cel-Tech*, 20 Cal. 4th at 186; c*f. Beatrice Foods Co. v. F.T.C.*, 540 F.2d 303, 312 (7th Cir. 1976) ("The entering of a consent decree … is not a decision on the merits and therefore does not adjudicate the legality of any action by a party thereto.").

Apple also fails to state a claim under the "unfair" prong of Section 17200. When a plaintiff alleges an "unfair" act against a direct competitor under the UCL, "unfair" is defined to mean "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 186-87. Because the "unfair" element is purportedly satisfied here by Nokia's supposed violation of the Sherman Act, Nokia's failure adequately to allege any violation of that Act dooms its claims under the UCL's "unfair" prong. *Hicks*, 165 F. Supp. 3d at 911.

Apple's allegations fail to plead an unfair competition claim and should be dismissed.

### D. Apple's breach of contract counterclaim should be dismissed.

In its first counterclaim, Apple alleges that Nokia has breached "contractual commitments with the ITU and its members" on two grounds: "a. failing to offer Apple a license to its declared H.264 patents on RAND terms," and "b. seeking to enjoin Apple products in this and other actions ..." Dkt. 28 at 151. Apple's breach of contract counterclaim should be dismissed as to both grounds.

With respect to the both the first and second grounds, Apple's Breach of RAND claims premised on Nokia's RAND commitments should be dismissed because Apple failed to plead a necessary condition precedent: that Nokia's asserted claims are actually essential. For example, Nokia's 2001 RAND commitment provides that it applies only "[i]n case part(s) or all of any proposals contained contributions submitted by [Nokia] are included in ITU-T Recommendation(s) and the included part(s) contain items that have been patented ...." Dkt. 28 at 36. This commitment, in other words, is conditioned on the circumstance in which the patent claims at issue are in fact essential to the H.264 standard. And with respect to "conditions precedent, it is the plaintiff that must plead the occurrence of the condition precedent, or face a

motion to dismiss for failure to state a claim." *In re Dibiase*, 270 B.R. 673, 687 (Bankr. W.D. Tex. 2001); *see also Sam v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 73028, *25-26 (S.D. Tex. May 20, 2016) (finding that plaintiff failed to "state a claim to relief ... that is plausible on its face" where plaintiff failed "to plead the necessary condition precedent"). Apple has failed to plead this necessary condition precedent. As noted, Apple simply describes Nokia's asserted patent claims as "purportedly" and "allegedly" essential. Dkt. 2, 5, 25. Nowhere does it identify which of the patent claims were in fact "included in [the] ITU-T Recommendation(s)" at issue. Dkt. 28 at 36. In the absence of any pleading that confirms the occurrence of this necessary condition precedent, Apple's breach of contract counterclaims based on Nokia's RAND commitments fail as a matter of law.

And there is an additional problem with respect to the second ground, which asserts that "Nokia's initiation of this litigation seeking injunctive relief based on declared SEPs against Apple ... constitutes a breach of Nokia's RAND obligations." Dkt. 28 at 45, 151. Apple's claims against Nokia, to the extent they are predicated on Nokia's inclusion in its prayer for relief of an injunction in the event Apple is an unwilling licensee, should be dismissed for two reasons.

*First,* Nokia's request is in keeping with existing law. Nokia's request for injunction is worded as follows: "in view of the fact that Apple is an unwilling licensee, entering an injunction in favor of Nokia, precluding Apple and any entities in active concert with it from future acts of infringement." Dkt. 1 at 82. Courts have held that injunctions preventing infringement of essential patent claims are appropriate against unwilling licensees. *See Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012) (concluding that defendant did not breach ETSI FRAND obligations "simply by requesting an injunction"). The ITU Guidelines do not prohibit an SEP holder from seeking injunctive relief,

and Apple's lengthy recitations of those Guidelines, the General Patent Statements and Licensing Declarations, and individual Patent Declarations cite no such prohibition or obligation. Dkt. 28 at 35-37. The Federal Circuit has further held, in a case involving Apple and its request for a blanket prohibition on SEP injunctions, that it would be error to apply "a *per se* rule that injunctions are unavailable for SEPs." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). As the Federal Circuit reasoned, "an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect." *Id.* at 1332.

Second, the request for injunction pointed to by Apple is in Nokia's prayer for relief. But to obtain an injunction, Nokia will have to file a request for injunctive relief at the appropriate time in the case, typically, following a favorable jury verdict on liability. This Court will consider such a request, giving proper consideration to RAND principles, and thus there is built-in safeguard against an injunction breaching RAND.

**E.**     **Apple's promissory estoppel counterclaim should be dismissed.**

In its second counterclaim, Apple asserts a claim for promissory estoppel based on the same purported "commitments to ITU that it would license its declared SEPs on RAND terms." Dkt. 28 at 151. Promissory estoppel "is an equitable doctrine that, absent a contract or agreement, provides a remedy that enables an injured party to recover for its foreseeable, definite, and substantial reliance." *Goss v. Firestone Polymers, L.L.C.*, 2005 U.S. Dist. LEXIS 32755, *73-74 (E.D. Tex. Apr. 13, 2005). Apple's promissory estoppel counterclaim should also be dismissed, for at least two reasons.

*First*, promissory estoppel is "mutually exclusive of a contract claim, which [Apple has] asserted." *Button v. Chubb Lloyds Ins. Co. of Tex.*, 2012 U.S. Dist. LEXIS 179231, *10 (E.D.

Tex. Dec. 19, 2012). As a matter of law, "you cannot have one if you have the other." *Id.* Because Apple has asserted that it is a proper third party beneficiary of a binding contract, its pleading of promissory estoppel on the same purported factual grounds must be dismissed. *Id.*

*Second*, Apple's promissory estoppel claim fails for much the same reasons that its breach of contract claim fails: the alleged "clear and definite promises" that Apple identifies are conditioned on the circumstance that Nokia's patent claims are included in the recommendation. Dkt. 28 at 36. In the absence of any pleading identifying those patent claims that Apple asserts are in fact essential to the H.264 standard, Apple has not plausibly pleaded any "clear and definite promises" upon which it acted "in reliance." Dkt. 28 at 151-52; *see Goss*, 2005 U.S. Dist. LEXIS 32755 at *73-74. Its promissory estoppel claim should thus be dismissed on this ground as well.

## IV.    CONCLUSION

For all of these reasons, Nokia respectfully requests that the Court grant its motion and dismiss Apple's antitrust, unfair competition law, breach of contract, and promissory estoppel counterclaims in their entirety.

Dated: May 18, 2017                          Respectfully submitted,

                                             /s/ Theodore Stevenson, III
                                             _____
                                             Theodore Stevenson, III
                                             tstevenson@mckoolsmith.com
                                             Nicholas Mathews
                                             nmathews@mckoolsmith.com
                                             Richard Kamprath
                                             rkamprath@mckoolsmith.com
                                             John Roddy Pace
                                             jrpace@mckoolsmith.com
                                             MCKOOL SMITH, P.C.
                                             300 Crescent Court, Suite 1500
                                             Dallas, Texas  75201
                                             Telephone: (214) 978-4000
                                             Facsimile: (214) 978-4044

Samuel F. Baxter
sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 3000
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Kevin L. Burgess
kburgess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

John D. Haynes
john.haynes@alston.com
Patrick J. Flinn
patrick.flinn@alston.com
Wesley C. Achey
wes.achey@alston.com
David S. Frist
david.frist@alston.com
Michael C. Deane
michael.deane@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

***Counsel for Plaintiffs Nokia
Technologies Oy and Alcatel-Lucent
USA Inc.***

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 18th day of May, 2017, a true and correct copy of the foregoing document has been served via the Court's ECF system to all counsel of record.

*/s/ Nicholas Mathews*
Nicholas Mathews
